**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **HAMMEL J. CLARK** | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RWT-09-2895 |
| **MS. K. JACOBS,** *et al.* | * | |
| Defendants | * | |

\*\*\*

## MEMORANDUM OPINION

On June 17, 2011, Defendants Mail Room Supervisor Linda Cole, Captain Wesley Crist, Case Management Manager Robert Miller, Case Management Supervisor Karen Leisinger, and Facility Administrator Denise Gelsinger at Maryland Correctional Training Center filed a Motion to Dismiss, or in the alternative, for Summary Judgment.[1]  *See* ECF No. 51.  The matter is now fully briefed and ready for adjudication.  *See* ECF Nos. 53, 54, 55, & 57.  Upon review of the papers filed, the Court finds a hearing in this matter to be unnecessary.[2]  *See* Local Rule 105.6 (D. Md. 2011).

---

[1] The motion has not been filed on behalf of Mr. Moats, Case Manager, Sgt. Holder, or Ms. Madden, Case Management.  For the reasons that follow, even if these Defendants had been properly served, Plaintiff's Complaint as to these Defendants would also be subject to dismissal.

[2] Also pending are Plaintiff's Motions to Amend.  ECF Nos. 55 & 57.   Because Plaintiff is *pro se*, the Court will interpret these pleadings liberally.  *United States v. Garcia*, 65 F.3d 17, 19 (4th Cir.1995).   The motions appear to be supplemental oppositions to the dispositive motion rather than true motions to amend the Complaint.  Accordingly, the Motions to Amend [ECF Nos. 55& 57] shall be denied but still be considered as additional oppositions in considering Plaintiff's claims.

**Background**

A. Complaint

Plaintiff, Hammel J. Clark, alleges that the Defendants improperly confiscated and misdirected his legal mail during the pendency of a state court litigation concerning the Sundry Claims Board, as well as, during the pendency of a civil rights case filed in this Court. *See* Compl. at 3, ECF No. 1. At the time this case was initiated, Plaintiff, who was incarcerated at Roxbury Correctional Institution (RCI), had to rely on the mail room to send out his legal documents in connection with a case concerning medical care because he was indigent. *Id.*

Plaintiff states that Supervisor "Ms. L. Cole" of the RCI mail room confiscated his legal mail and when Plaintiff informed Captain Crist, no corrective action was taken. *Id.* According to Plaintiff, Plaintiff told Case Manager Mr. Moats that he had a filing deadline and Mr. Moats approved the legal mail to be sent from the institution. *Id.* Plaintiff alleges that Ms. Cole intercepted the legal mail pre-approved by Mr. Moats and refused to send it out. *Id.*[3] The legal mail, which Plaintiff does not describe, was returned to him and he missed a filing deadline. *Id.* at 4.

Plaintiff claims he met with Case Management Supervisor D. Gelsinger, and explained that he was a self-represented litigant who is indigent and had to depend on the mail room to send out his legal papers that the failure to mail his legal mail was improper. *Id*. at 3. Despite

---

[3] Plaintiff states he complained about the legal mail to the undersigned in correspondence dated July 14, 2008. *See* Compl. at 4, ECF No. 1. The Court is not clear as to what facts Plaintiff relies on when concluding that his mail was delayed. Plaintiff appears to believe that the RCI mail room held mail sent to this Court while sending the service copies to opposing counsel thereby giving opposing counsel warning of Plaintiff's impending response and depriving this Court of the benefit of Plaintiff's responsive pleading. *Id.*

Plaintiff's efforts, Plaintiff alleges that Ms. Gelsinger would not allow his legal mail to go out as retaliation for suing prison and medical staff at RCI. *Id*.

On June 23, 2008, Plaintiff was transferred to Western Correctional Institution (WCI); Plaintiff states that the transfer was in retaliation for his litigation. *Id*. at 4. Plaintiff also claims that the transfer and interference with legal mail resulted in an administrative appeal of the Sundry Claims Board, state case number C-07-126896, being stricken. *Id. See also In the Matter of Hammel J. Clark*, Civ. No. C-07-126896 (Anne Arundel Co. Cir. Ct.). In addition, Plaintiff claims the delay in delivering his legal mail also resulted in dismissal of his case in this court. *See* Compl. at 4-5, ECF No. 1.

Plaintiff also alleges that he was denied "a copy of his inmate account verification form certified from a Notary Public." *Id.* at 5. He states white inmates are permitted to walk up to case management, ask for one of the forms, and receive it, but he was told the form would have to be mailed to him. *Id.* He states these forms are very important in a lot of court cases and Ms. Gelsinger's refusal to provide one to him was discriminatory. *Id.* Ms. Gelsinger told Plaintiff the only way he could get mail sent out of the institution was with the approval of the Security Chief despite the fact that he did not present a security threat. *Id.* He further alleges that Defendants kept each other apprised of Plaintiff's legal cases and orchestrated his transfer to a higher security prison where he was placed on lock down for two weeks, in order to quell his litigation efforts. *Id.*

B. Factual Background

Because Plaintiff's complaint is premised on the notion that Defendants adversely affected Plaintiff with respect to other court cases, a review of Plaintiff's relevant litigation history is necessary to the determination of his case.

### *1. Plaintiff's Litigation History*

#### *a. Sundry Claims Board Claim: In the Matter of Hammel Clark*

Mr. Clark filed a claim with the Sundry Claims Board regarding an electric shock he sustained on February 11, 2006, while working at a prison-assigned job. *See* Defs. Mot. Summ. J., Case History, In the Matter of Hammel J. Clark, Ex. 1 at 9, ECF No. 51-2 at 9. A hearing was conducted on October 25, 2006. *Id.* at 10. Plaintiff's claim was denied; the Board found that Plaintiff's credibility was questionable and there was a lack of objective evidence of injury. The Board concluded that any negative effect of the incident was "greatly exaggerated, if not wholly fabricated, by [Plaintiff]." *Id*. The Board determined that Plaintiff had not suffered any permanent total or partial permanent disability. *Id*.

After his fee waiver request was granted, Plaintiff timely sought judicial review of the Board's decision in the Anne Arundel County Circuit Court in Case No. 02-C-07-126896. *Id.* at 2-3. After briefing and a hearing, on June 4, 2006, the Circuit Court affirmed the decision of the Board, finding the decision was supported by substantial evidence and the Board did not violate Plaintiff's right to due process. *Id*.

Pursuant to Maryland Procedure Rules, Plaintiff was required to file a notice of appeal with the Anne Arundel Circuit Court within thirty days of the entry of judgment and to pay the filing fee. *See* Md. Rules 8-201 & 8-202. Instead, Plaintiff filed a notice of appeal, and

memorandum in support thereof, with the Maryland Court of Special Appeals which was dated June 26, 2008. *Id.* at 44-63. On August 21, 2008, Plaintiff wrote to the Anne Arundel County Circuit Court explaining that soon after the Circuit Court's judgment was entered he was transferred. *Id.* at 44-48. He stated that he did not have access to his legal papers or a law library to research the procedure for noting his appeal. [4] *Id.* Plaintiff made no reference to any efforts to contact the circuit court prior to the August 21, 2008 letter. *Id.*

Plaintiff's August 21, 2008 letter was not received by the appellate court until September 9, 2008. *Id.* at 43. At that time the clerk issued a notice advising Plaintiff that he had not paid the required $110 filing fee. *Id.* The court also issued an order requiring Plaintiff to show cause why his notice of appeal should not be stricken as untimely. *Id.* at 42. In his show cause response, Plaintiff referred to general problems with legal mail but made no specific assertions that he had attempted to mail the notice of appeal to the circuit court prior to August 21, 2008. *Id.* at 25-28. Instead, he discussed his transfer to WCI and his *pro se* status. *Id.* After consideration of Plaintiff's response, the court struck the notice of appeal. *Id*.

### b. Federal Claim: Clark v. Maryland Department of Public Safety and Correctional Services

In addition to the claim filed with the Sundry Claims Board, Plaintiff also instituted a civil rights action in this Court arising from the electric shock received in his prison employment. *See* Compl., Clark v. Maryland Department of Public Safety and Correctional Services, No. RWT-07-19 (D. Md. January 1, 2007), ECF No. 1.

---

[4] Plaintiff was transferred from RCI to the Western Correctional Institution ("WCI") on June 23, 2008. *See* Defs. Mot. Summ. J., Decl. of Karen A. Leisnger, Ex. 3 ¶ 3, ECF No. 51-4 at 1. Plaintiff reiterates his argument in his opposition to the dispositive motion indicating that he did not have access to legal materials to discern how to properly note his appeal. *See* Pl. Mot. to Deny Defs. Mot. to Dismiss, ECF No. 51.

Plaintiff contacted this Court in a letter dated July 3, 2008, complaining that several letters he wrote in late June were not received. *See* Correspondence, Clark v. Maryland Department of Public Safety and Correctional Services, No. RWT-07-19 (D. Md. July 16, 2008), ECF No. 61. Letters matching Plaintiff's description were, however, received by the Court. *See* Correspondence From Plaintiff, Motion for Entry of Default, Notice of Change of Address, Clark v. Maryland Department of Public Safety and Correctional Services, No. RWT-07-19 (D. Md. June 20-27, 2008), ECF No. 53-55. Additionally, on July 3, 2008, the court received Plaintiff's "Motion for Help" asserting he had not received Defendants' dispositive motion, although he had received the Court's Rule 12/56 letter. *See* Motion for Help, Clark v. Maryland Department of Public Safety and Correctional Services, No. RWT-07-19 (D. Md. July 16, 2008), ECF No. 60. However, as noted in this Court's September 3, 2008 memorandum opinion, Mr. Clark must have received a copy of Defendants' dispositive motion because Mr. Clark responded to the content of that motion with additional argument and evidence. *See* Memorandum Opinion, Clark v. Maryland Department of Public Safety and Correctional Services, No. RWT-07-19 (D. Md. September 3, 2008), ECF No. 65.

The Court granted Defendants' Motion for Summary Judgment, and the Fourth Circuit affirmed. *See* Mandate of USCA, Clark v. Maryland Department of Public Safety and Correctional Services, No. RWT-07-19 (D. Md. March 13, 2009), ECF No. 71.

### c. State Claim: *Clark v. Kradel*

Mr. Clark brought another claim against his medical providers, mental health providers, and two correctional officers in state court alleging negligence and medical malpractice in connection with the same events giving rise to the Sundry Claims Board case and the federal

civil rights case in this Court. *See* Defs. Mot. Summ. J., Record, Hammel Clark v. Paul Kradel, et al., Anne Arundel County Circuit Court Case No. 02-C-0813167, Ex. 2 at 23-39, ECF No. 51-3 at 23-39. Plaintiff sought and received assistance with service of process on the named defendants, with costs for service waived. *Id*. at 8. The correctional defendants were not served because they no longer worked at the addresses provided by Plaintiff.[5] *Id.* at 55 & 57. Service on several other defendants was improper as mailroom workers, unauthorized to accept service on their behalf, signed for the summons and complaint. *Id.* at 66. After consideration of a motion to dismiss and Plaintiff's responses, the Circuit Court dismissed Plaintiff's complaint relying on Plaintiff's failure to comply with the alternative dispute resolution mechanism required under Maryland Health Care Malpractice Claims Act, Md. Code Ann., Cts. & Jud. Proc. §3-2A-02; §3-901; §3-2A-04(a), failure to comply with the exhaustion requirements of the Maryland Prison Litigation Act, and failure to effect proper service on some Defendants. *Id*. at 64-66.

### 2. Facts Regarding Mail Policy and Mail Delivery

The Division of Corrections' policy is to give indigent inmates, such as Plaintiff, pen, paper, envelopes, and sufficient first class postage to mail seven first class letters per week. *See* Defs. Mot. Summ. J., Decl. of Linda Cole, Ex. 5 ¶ 2, ECF No. 51-6 at 1; Defs. Mot. Summ. J., DCD No. 250-1-Incoming and Outgoing Mail Policy, Ex. 10, ECF No. 51-11. If additional postage or writing materials are needed for legal correspondence, the inmate may request same

---

[5] Plaintiff maintains that this case was dismissed because he was denied access to certified mail. *See* Compl. at 4, ECF No. 1. While some Defendants were dismissed due to a failure to effect proper service, the dismissal was due to improper addresses, not due to Plaintiff's lack of access to certified mail. Plaintiff had in fact been given assistance by the Clerk and Sheriff in mailing out the summons. *See* Defs. Mot. Summ. J., Record, Hammel Clark v. Paul Kradel, et al., Anne Arundel County Circuit Court Case No. 02-C-0813167, Ex. 2 at 8, ECF No. 51-3 at 8.

from his case management specialist. *Id.* The case management specialist is to grant the request unless he believes that the inmate is abusing the mail system. *Id.* If the case management specialist believes the inmate is abusing the mail system the inmate's request is referred to the assistant warden for disposition. *Id.* Certified mail is not included in the indigent mail allowance. *Id.* Permission to mail a letter certified must be requested by the inmate and is approved only where the certified mailing is legally required.[6] *Id.*

As a frequent litigant in many courts, Plaintiff requested additional postage, in excess of the indigent allowance. *See* Defs. Mot. Summ. J., Decl. of Denise Gelsinger, Ex. 4 ¶ 4, ECF No. 51-5 at 1. Defendant Gelsinger forwarded Plaintiff's requires to the Assistant Warden per Division of Correction policy. *Id.* Plaintiff also frequently requested hundreds of pages of photocopies. *Id.* The requests were not always honored due to the excessive volume of his requests. *Id.*

Defendant Cole, the mailroom supervisor at RCI, is responsible for handling regular indigent inmate mail. *See* Defs. Mot. Summ. J., Decl. of Linda Cole, Ex. 5 ¶ 1, ECF No. 51-6 at 1. Ms. Cole avers that all inmate mail is opened and inspected for contraband. *Id.* Legal mail is logged into the legal mail log book and sent to the housing units to be opened by an officer in front of the inmate. *Id.* Indigent mail is handled by the 7-3 shift lieutenant who checks the inmate's account to ensure the inmate is indigent. *Id.* The mail is then logged by the lieutenant and brought to the mail room for postage. *Id.* Ms. Cole ensures all indigent mail receives the necessary postage and then sends the mail to the post office. *Id.* Ms. Cole is not authorized to

---

[6] Many of Plaintiff's certified mail requests were to mail documents to the courts. *See* Pl. Mem. to Mot. to Dismiss, Ex. A., ECF No. 53-1. This may have been Plaintiff's preferred mail delivery, but it was not legally required.

award additional postage. *Id.* ¶ 2. Rather, she can only instruct inmates to seek additional postage from their case management specialist. *Id.* Ms. Cole avers that she so instructed Plaintiff. *Id.* ¶ 3. She further avers that she never opened or inspected legal mail outside the presence of Plaintiff.[7] *Id.* ¶¶ 4-5.

Captain Crist avers that he has no recollection of Plaintiff complaining to him about the treatment of his legal mail. See Defs. Mot. Summ. J., Decl. of Wesley Crist, Ex. 6 ¶ 2, ECF No. 51-7 at 1. He further avers that he never knowingly opened legal mail outside the presence of an inmate. *Id.* ¶ 4. He also states he is not responsible for awarding additional postage to indigent inmates. *Id.* ¶ 3.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

---

[7] She also avers that Plaintiff mailed three pieces of certified mail on June 19, 2008. The letters were addressed to the United States District Court in Baltimore, the Circuit Court for Anne Arundel County, and the Maryland Court of Appeals in Annapolis. *Id.*

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## **Analysis**

A. Legal Mail

Courts typically analyze prisoner claims regarding legal mail as access to court claims. To state a constitutional claim for denial of access to the courts, a prisoner must show that the alleged shortcomings "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Hudspeth v. Figgins*, 584 F.2d 1347 (4th Cir. 1978). In *Lewis v. Casey*, the Supreme Court clarified the *Bounds v. Smith* decision by finding that a deprivation of a prisoner's right of access to the courts is actionable, but only where the prisoner is able to demonstrate actual injury from such deprivation. *Lewis*, 518 U.S. at 349. The actual injury requirement, however, is not satisfied by just any type of frustrated legal claim. *Id*. at 354. Rather, the *Lewis* Court concluded

that *Bounds v. Smith* stood for the proposition that prisoners are not guaranteed the ability to litigate every imaginable claim they can perceive, but that they have the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. at 354.  Moreover, to state a claim that the delay or non-delivery of legal mail deprived him of meaningful access to the courts, a prisoner must allege an adverse consequence resulting from the delay or non-delivery.  *See White v. White*, 886 F.2d 721, 724 (4th Cir.1989) (holding that the trial court did not abuse discretion in dismissing prisoner's *pro se* mail-related deprivation of meaningful access to the courts claim because plaintiff failed to allege adverse consequences resulting from the challenged prison policy).

Certainly, the deliberate interference with the posting of some types of outgoing mail by prison staff may state a claim of constitutional dimension.  However, occasional incidents of delay or non-delivery of mail do not rise to a constitutional level.  *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997); *Smith v. Mashner*, 899 F.2d 940, 944 (10th Cir. 1990); *see also Pearson v. Simms*, 345 F. Supp. 2d 515, 519 (D. Md. 2003) ("[O]ccasional incidents of delay or non-delivery of mail do not rise to a constitutional level.").  Nor does the mere negligent interference by correctional officials with an inmate's access to the courts state a cause of action under § 1983.  *See Pink v. Lester*, 52 F.3d 73, 75-76 (4th Cir. 1995) (holding that a plaintiff's allegations that prison officials negligently interfered with inmate's due process rights and right to access to the courts, by failing to promptly process money order request from inmate's account was needed to perfect inmate's appeal from forfeiture order, did not constitute a § 1983 civil rights claim).  Moreover, the right of access to the courts does not amount to the right

unlimited free postage. *See White*, 886 F.2d at 723. Reasonable regulations of an inmate's right to postage is necessary to balance competing budgetary concerns. *Id.*

Here, there is no evidence that Defendants acted so as to interfere with the posting of Plaintiff's mail. Further, Plaintiff has shown no actual injury or specific harm sufficient to support a claim of denial of access to the court, which he has suffered as a result of the alleged disruption of his mail, the denial of certified mailing, or the denial of photocopying privileges. The docket sheets and decisions of the various courts where Plaintiff was pursuing his cases contradict Plaintiff's claims of mail tampering. There is no evidence that any adverse action was taken in any of Plaintiff's cases due to activity that can be tied to a failure to properly process Plaintiff's mail or permit him to mail a document certified. The only evidence Plaintiff offers of injury are conclusory statements that the conduct of Defendants violated his constitutional rights.

Plaintiff's claim that, at times, his incoming legal mail was torn, ripped, or missing papers also fails. *See Gardner v. Howard*, 109 F.3d 427,431 (8th Cir. 1997) ("isolated, inadvertent instance of prison personnel opening incoming mail marked confidential 'without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation) (quoting *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)).

B.  Retaliation

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "'A complaint

which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D.N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Here, Plaintiff offers nothing in support of his claim other than self-serving conclusory averments. To the extent that Plaintiff's complaint can be construed as alleging that the retaliatory action (delay of his outgoing legal mail) was taken in response to Plaintiff's filing cases in court or in an effort to thwart his ability to access the courts, his claim still fails as he has failed to show he suffered adversity in response to the exercise of his protected rights. *See ACLU of Maryland v. Wicomico County*, 999 F.2d 780, 785 (4th Cir.1993) ("[A] showing of adversity is essential to any retaliation claim"); *Scott v. Kelly*, 107 F.Supp 2d 706, 709 (E.D.Va. 2000).

C.  Discrimination

In support of his discrimination claim, Plaintiff alleges that Ms. Gelsinger failed to provide him a notarized copy of his inmate account balance in person, but rather made make that request in writing. He states that white inmates are permitted to receive their account statement upon verbal request. Ms. Gelsinger avers that she does not recall this incident with Plaintiff. *See* Defs. Mot. Summ. J., Decl. of Denise Gelsinger, Ex. 4 ¶ 6, ECF No. 51-5 at 2. She further avers that she has never given preferential treatment to any inmate in the handling of their account

forms based on race. *Id.* Gelsinger explains that the account balance form must be notarized and that cannot occur if the notary is not working on a day the form is requested.[8] *Id*.

Inmates have a constitutional right to be free from discrimination on the basis of race. *See Lee v. Washington*, 390 U.S. 333 (1968). However, "absent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated." *Chapman v. Reynolds*, 378 F. Supp. 1137, 1140 (W.D. Va. 1974); *see also Williams*, 926 F.2d at 998 (conclusory allegation of racial discrimination in confiscation of excess property insufficient to state claim because no allegation that prisoners of another race were allowed to retain more property); *Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir. 1980) (conclusory allegations of racial discrimination insufficient to state claim). A prisoner must show more than disparate impact. *See Washington v. Davis*, 426 U.S. 229, 240 (1976). A mere conclusory averment, as provided by Plaintiff in the instant case, is insufficient to withstand a dispositive motion. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979).

D.  Transfer

"[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). In the prison context, there are two different types

---

[8] Plaintiff argues that Gelsinger is lying in her affidavit because the account statement cannot be notarized in the absence of the inmate and then mailed to him. *See* Pls. Mot. to Deny Defs. Mot. to Dismiss, ECF. No. 54. Plaintiff is mistaken. The notary witnessed the signature of the case manager, not the inmate. *See* Pls. Mot. to Deny Defs. Mot. to Dismiss, Ex  J. ECF. No. 54

of constitutionally protected liberty interests which may be created by government action. The first is created when there is a state created entitlement to an early release from incarceration. *See Board of Pardons v. Allen*, 482 U.S. 369, 381 (1987) (state created liberty interest in parole); *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (state created liberty interest in good conduct credits). The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U. S. 472, 484 (1995).

Following the reasoning of the Supreme Court in *Sandin*, Plaintiff's transfer to WCI does not in and of itself implicate a liberty interest; he has no entitlement to notice and an opportunity to be heard prior to his transfer because as a prisoner he has no liberty interest in being housed in any particular prison facility—it is not atypical for inmates to be transferred among correctional facilities. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). To the extent Plaintiff claims his transfer from RCI to WCI,[9] a lateral transfer requested by the RCI Warden, was improper, his claim also fails.

Plaintiff's claim based on the allegation that Defendants violated their own policy in not permitting him to participate in the classification decision that led to his transfer to WCI also fails. This is because the adoption of procedural guidelines does not give rise to a liberty

---

[9] Plaintiff is classified as a medium security inmate. RCI houses medium security inmates. WCI houses both medium and maximum security inmates. Plaintiff has retained his medium security classification. *See* Defs. Mot. Summ. J., Decl. of Karen A. Leisnger, Ex. 3 ¶ 4, ECF No. 51-4 at 1.

interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process.  *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987). [10]

### Conclusion

For the aforementioned reasons, Defendants' Motion, construed as a motion for summary judgment, shall be granted.   A separate Order follows.

Date: February 22, 2012                                           /s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE

---

[10] Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. See Myers v. Kelvenhagen, 97 F.3d 91, 94 (5th Cir. 1996).